No. 35,327

P. G. PORTER, *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant*.

(127 P. 2d 444)

Opinion filed July 11, 1942.

*Benjamin F. Endres*, of Leavenworth, argued the cause, and *Harry Cole Bates*, of New York, N. Y., was on the briefs for the appellant; *Gerald W. Foley*, of Atchison, of counsel.

*Prentice A. Townsend*, of Atchison, argued the cause for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover double indemnity on a life insurance policy which provided that upon receipt of proof that the insured had sustained bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the insured, the defendant would pay an additional amount equal to the face of the policy.

The late Mrs. Jessie Johnson, of Kansas City, Mo., held a policy of life insurance for $516 issued by defendant in 1931, and payable to plaintiff at her death. She died on October 27, 1938, and her body was taken to an undertaker's establishment in Kansas City, Kan. The attending physician declined to sign a death certificate without

holding a post-mortem examination which plaintiff and his wife, daughter of deceased, were only persuaded to permit on the threat of the undertaker to take the body back to Missouri, where an autopsy might be held without their consent. An autopsy was held by Dr. Eugene P. Chatman, following which he made a certificate of death as required by the bureau of vital statistics of the Missouri state board of health.

Defendant paid the face value of the policy without cavil, but rejected plaintiff's claim for the double indemnity on the ground that there was no proof that the death of the insured was caused by "external, violent and accidental means, resulting directly and independently of all other causes," within the terms of the insurance contract.

Hence this lawsuit. Issues were joined, and a jury was called and sworn. Plaintiff adduced his evidence. Defendant's demurrer to its sufficiency was overruled. Defendant then adduced its evidence, and the cause was submitted to the jury, which eventually reported they could not agree. The court declared a mistrial and discharged the jury.

Defendant appeals, assigning error on the trial court's ruling on its demurrer to plaintiff's evidence.

The evidence relied on to sustain plaintiff's claim to the double indemnity was as follows:

The insured was about fifty-one years of age and somewhat overweight. On the afternoon of August 14, 1938, two women, a Mrs. Harness and Myrtle Simmons, were visiting in her home. She excused herself to them, saying she was going to take a bath. Sometime later, her two visitors heard a splash and a dull thud. They ran to the bathroom and found the floor covered with water, and Mrs. Johnson sitting in the tub. One of those visiting women, Myrtle Simmons, testified that Mrs. Johnson had fallen in the tub and could not get out of it, that she and Mrs. Harness tried to get her out, but Mrs. Johnson said, "Wait a minute, I am hurt." When asked where, she answered, "In my right side; you all wait." Eventually the two women got her out of the tub and helped her into bed. She complained of her side hurting while she was in the tub and after they put her to bed. The same witness testified that she called the same evening and found Mrs. Johnson still in bed and complaining of her side.

Eight days later, on August 22, Mrs. Johnson was taken to a hos-

pital where she stayed about a month and was discharged. Some days later, her daughter, Mrs. P. G. Porter, went to see her and found her in bed and sent her to another hospital where she became the patient of Dr. Eugene P. Chatman. The insured stayed in that second hospital until her death.

The death certificate, in part, reads:

"The principal cause of death and related causes of importance were as follows:

"Abscess of the liver.

"Other contributory causes of importance: Fall.

"What test confirmed diagnosis? Blood cultures.

"Was there an autopsy? Yes.

"If death was due to external causes (violence), fill in the following: Accident. Yes.

"Where did injury occur? At home, 1410 Troost.

"Manner of injury. Fall in the bathtub.

"Nature of injury. [No answer.]

"Was disease or injury in any way related to occupation of deceased? No.

"(Signed)   EUGENE P. CHATMAN."

There was some evidence that a few days before the alleged accident the deceased had a touch of indigestion caused by eating cheese, but that she had completely recovered therefrom before August 14.

In this appeal counsel for defendant contend that the evidence as summarized above was insufficient to take the case to the jury. They even insist that there was no evidence that the insured fell in the bathtub. We, however, have no hesitancy in holding the fact of her fall and the time and place of it were about as well proved as can ordinarily be done in any case where eyewitnesses are wanting and where there are no objective symptoms of injury. In our recent accident insurance case of *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 122 P. 2d 763, the insured was discovered lying on the floor of his office with a fractured skull. His death followed in five days, and in an action to recover on the policy whose terms were similar to those of the one now before us we held that the circumstances warranted a presumption that the insured's death was caused by an accidental fall rather than by suicide or murder.

Our difficulty is not with any paucity of evidence that Mrs. Johnson suffered an accidental fall in her bathtub on August 14, 1938, but to discover any semblance of proof that her fall in the bathtub caused the abscess of the liver from which she died. The indulgence of our law makes the recitals of the death certificate competent evidence. (*Jaques v. Commercial Travelers*, 104 Kan. 612, 617, 180 Pac. 200.) But that certificate declares that the principal cause of death was abscess of the liver. The double liability on the policy sued on requires receipts of due proof that the insured sustained bodily injuries, solely through external, violent and accidental means, which resulted directly and independently of all other causes in her death. The death certificate does not supply those requisites. It says the fall in the bathtub was an important contributing cause, but defendant's obligation to pay the double liability is not established by proof that the fall in the bathtub was an important contributing cause. Where the evidence in this case failed completely was the want of some competent testimony to show that the abscess of the liver which the death certificate declared to have been the principal cause of Mrs. Johnson's death resulted from the fall in the bathtub. The death certificate in effect is to the contrary—that the fall in the bathtub was an important contributing cause but not the principal cause. How then can we say that the evidence concerning the fall in the bathtub and the recitals of the death certificate were sufficient to overcome defendant's demurrer, and shirk our judicial responsibility by letting the case go to the jury?

Counsel for appellee does not help us over this dilemma. He cites cases like *Williams v. General A. F. & L. Assurance Corp.*, 144 Kan. 755, 62 P. 2d 856, where we said, "If the accident be shown to be the cause of the injury for which the action is brought plaintiff can recover." Certainly he could recover in such a case. Further along in the same opinion, it is said:

"Most of the courts look to the evidence to see whether the accident caused the injury for which the action was brought. Many of the cases use the term 'proximate cause,' as do some of the leading authorities. (Citations.) . . . In some of the cases cited these terms are used: 'efficient and predominating cause,' 'independent and sufficient cause,' 'sole moving and active cause.' But, without regard to the characterizing words used, the proper inquiry, and the one usually made, is whether the injury for which suit was brought was caused by the accident. When that is controverted, generally it is held to be a question for the jury." (p. 758.)

None of the other cases cited supports the position of the appellee.

Thus in *Corsones, Admr., v. Monarch Acc. Ins. Co.*, 103 Vt. 379, 154 Atl. 693, where the double indemnity was allowed to plaintiff, a waiter had sustained injuries by a fall while carrying dishes. The evidence tended to show that the fall caused a hernia, and consequently the case was rightly decided. But we have groped in vain for evidence in this case tending to show that the fall caused the abscess of the liver. The same distinction is obvious between the instant case and *Silverstein v. Metropolitan Life Ins. Co.*, 254 N. Y. 81, 171 N. E. 914, where the insured sustained a fall while carrying a milk can. There was evidence that in his fall he sustained an injury which culminated in an ulcer which eventually caused his death. So, too, in *Casualty Co. v. Colvin*, 77 Kan. 561, 95 Pac. 565, there was evidence to show that the disease which culminated in the death of the insured was caused by an accidental injury; and it was therefore quite proper to attribute the death to the injury rather than the resultant disease, insofar as concerned the obligation of the policy.

A painstaking consideration of the record and the briefs constrains a majority of this court to hold that defendant's demurrer to plaintiff's evidence should have been sustained. The judgment is therefore reversed with directions to enter judgment for defendant.

HARVEY and SMITH, JJ., dissent.