JOHN D. DRISKELL, Admr., etc., Appellant, v. UNIT-
ED STATES HEALTH and ACCIDENT INSUR-
ANCE COMPANY, Respondent.

**Kansas City Court of Appeals, March 5, 1906.**

1. **ACCIDENT INSURANCE: Pleading: External, Violent and Ac-
cidental Means.** A petition on a policy of accident insurance
alleged that the injury which resulted in death was caused by
the accidental falling of scalding water into the deceased's ear.
*Held,* that this disclosed an external and violent injury and
advised the defendant to meet a cause of action based upon
such an injury. [Hester v. Fidelity Company, 69 Mo. App. 186,
limited.]

2. ———: ———: **Resulted Solely.** A petition alleged that the
assured died from the effects of certain accidental injuries.
*Held,* the words of the pleading are expressed and in-
tended to present the injury as the proximate cause of the
death.

3. ———: ———: **Proximate Cause.** The proximate cause is the
predominant factor in the production of the result and need
not be so virulent as necessarily and inevitably to have pro-
duced that result regardless of all other conditions and cir-
cumstances. [Cases considered.]

4. ———: ———: ———: **Evidence: Jury.** Where the evidence
points to an injury as the sole active force that brings into
operation death-producing agencies, the issue of proximate
cause is for the jury and not the court.

5. ———: **Proximate Cause: Immediate Effect: Evidence.** The
words "such injury" in an accident policy refers to bodily in-
jury caused solely and exclusively by external, violent and ac-
cidental means without regard to the extent of disablement
that immediately follows the injury, and intervening results
are admissible in evidence as bearing upon the possible issue
of the proximate cause of death.

Appeal from Pettis Circuit Court.—*Hon. George F.
Longan,* Judge.

REVERSED AND REMANDED.

*H. T. Williams* for appellant.

(1) Scalding water escaping from the steam engine into deceased's right ear accidentally, and resulting in his death eleven days later, constitutes a bodily injury caused solely and exclusively by external, violent and accidental means. The petition sufficiently alleges such injuries. Jamison v. Casualty Co., 104 Mo. App. 306; Dalzell v. Fidelity and Casualty Co., 176 Mo. 253; Loesch v. Casualty Co.,176 Mo. 654; 104 Mo. App. 157; 1 Cyc., 249, 257; 1 Cyc., 248; 42 Am. St., 374; 1 Cyc., 285, F, 2 b. (1). (2) It is not necessary for the petition to negative conditions or exceptions in the policy. These are matters of defense. 1 Cyc., 286 [V].; 1 Cyc., 287, 3, g, [I]; Farrell v. Liability Co., 34 Atl. 478; Ins. Co. v. Koehn, 33 S. W. 133. (3) Only such terms of the policy need be set forth in the petition as apply to the kind of injury and state of facts. Moore v. Mountcastle, 72, Mo. 605; 11 Ency. Pl. and Pr., 418. (4) The words "Such Injuries" refer to the character of the injuries and not to their effect nor to the time of their effect.

*Shain & Barnett* for respondent.

(1) A petition upon an accident insurance policy should expressly allege that the injury from which the assured died was incurred by him through external, violent and accidental means. An allegation to this effect is essential to support a judgment. Hester v. Fidelity and Casualty Co., 69 Mo. App. 197. (2) Material facts should be distinctly and not inferentially alleged. The court will not supply by intendment an averment which the pleader has failed to make. Cook v. Putman Co., 70 Mo. 668; Bredell v. Alexander, 8 Mo. App. 110. (3) The merits of appellant's case are not here in controversy, the pleadings only being the issue, and as the

pleader does not allege that the injury was external, violent and accidental he is not in a position to ask the court to pass upon the merits of his case. (4) Respondent's objection to appellant's pleading is on the ground that the pleader has not affirmatively pleaded the express conditions of the contract sued on, Moore v. Mountcastle, 72 Mo. 605. (5) The provision of paragraph b, if it would aid in any such construction, is not a part of petition as exhibits form no part of a petition in determining sufficiency on demurrer. Hickory Co. v. Fugate, 143 Mo. 71.

JOHNSON, J.—Action upon a policy of accident insurance. The petition is as follows:

"For his cause of action, the plaintiff states that heretofore, to-wit, on the 10th day of February, 1904, the probate court of Pettis county, Missouri duly appointed him administrator of the estate of John W. Driskell, deceased; that he qualified by giving the required bond as such administrator, and said probate court issued to him letters of administration on said estate, and that he is now the authorized acting administrator in charge of said estate with full power to sue in the courts of Missouri upon all obligations due said estate. Plaintiff states that the defendant is a corporation carrying on the business of accident insurance in the State of Missouri with the authority to sue and the liability to be sued under the laws of Missouri and in the courts of Missouri.

"Plaintiff states that heretofore, to-wit, on the 29th day of October, 1902, the defendant by its agents in consideration of the premiums, statements and agreements mentioned in its policy Number 217918, issued and delivered its said policy of accident insurance to the said John W. Driskell, deceased, which said policy is marked exhibit 'A' attached to this petition and filled with the same as a part of the record. Plaintiff states that de-

ceased paid all premiums and performed all conditions by him to be paid and performed under the terms and provisions of said policy, and that the same was in full force at the time of said deceased's injury and death. Plaintiff states that it is provided in said policy that the defendant did thereby insure the said John W. Driskell during the time said policy was in force 'in the sum of twenty-five dollars per month, or at that rate for any proportionate part thereof, against loss of time resulting from bodily injuries caused solely and exclusively by external, violent and accidental means, other than those specified in paragraph (b) of said policy which shall, independently of all other causes, and immediately following the receipt thereof, wholly and continually disable and prevent the assured from performing any and all duties pertaining to any business or occupation. Or, if such injuries should not wholly disable the assured, but should immediately, wholly and continuously disable and prevent him from performing one or more important daily duties pertaining to his occupation, or in event of such partial disability following a period of less than twelve months' total disability, the company would pay the assured two-fifths of the indemnity per month so specified for a period not exceeding six consecutive months, but the combined period for which indemnity should be paid for any such total and partial disability should not exceed twelve consecutive months.'

"And that by paragraph (c) of said policy it is provided that 'If death should result solely from such injuries, within three months from the date of the accident, the company should pay the principal sum of two hundred dollars to the estate of the said deceased.'

"That it was provided by paragraph (e) of said policy that 'the indemnity in said policy provided should be increased ten per cent on any claim accruing thereunder if the premiums thereon should be paid annually in advance, or on any claim originating after the policy should have been maintained in continous force without

default for not less than one year immediately preceding.' Plaintiff states that said deceased paid all premiums without default and kept said policy in force to the time of his death as therein required.

"Plaintiff further states that the assured, John W. Driskell, deceased was, at the time of such insurance, employed as a laborer in the Missouri Pacific railway shops at Sedalia, Missouri, as fire-knocker and general laborer, of which facts and circumstances said defendant, through its agents, had notice, and that, heretofore, to-wit, on about the 12th day of January, 1904, the said insured while engaged in the performance of his duties was accidentally injured by scalding water falling and escaping from the engine about which he was at work, into the deceased's right ear, from the effects of said accidental injury said assured thereafter died at the city of Sedalia, Missouri, on the 23rd day of January, 1904. That the deceased left surviving him his wife, Maude Driskell, and one child born since said deceased's death and that his estate consisted of a small amount of wages due from said Missouri Pacific Railroad Company and the insurance policy upon which this suit is instituted. Plaintiff states that due notice of the injury and death of the deceased and the caused thereof was furnished to said insurance company and that proofs of the said death were also made and furnished to said company within the time as required under the provisions of said policy.

"Plaintiff states that he demanded of said company the amount due under said policy, to-wit, the sum of two hundred and twenty dollars which the defendant has refused and still refuses to pay. But the plaintiff states that the defendant claimed to be liable under said policy for only twenty dollars and tendered to the plaintiff said sum of twenty dollars in discharge of said supposed liability, which tender the plaintiff admits was made, but which the plaintiff refused and still refuses.

"Wherefore the defendant is and was liable for the

payment under said policy of the sum of two hundred and twenty dollars to the plaintiff, for which sum of two hundred and twenty dollars and interest and costs the plaintiff asks judgment against the defendant."

Defendant demurred to this petition on the ground that it stated no cause of action. The demurrer was sustained. Plaintiff refused to plead further and appealed from the judgment entered in favor of defendant.

The first objection made to the petition is that it fails to allege in express terms that the death of the insured was produced by external, violent and accidental means and that, as defendant's liability under the provisions of the policy pleaded is restricted to that incurred by reason of the death of the insured from a cause falling within the definition of these three adjective words combined, it follows that each of them is elemental to a proper cause of action and should be expressly pleaded. It is the fact, that the bodily injury received by plaintiff is of the character defined, that is elemental and not the specific words used in the policy to describe the class of injuries against which defendant contracted to insure. If the facts alleged conclusively show the nature of the injury to have been one embraced within the class, there is no reason for holding the pleader to a particular phraseology, for it is the substance and not the form that determines the sufficiency of an averment. Plaintiff alleged that the injury which resulted in the death of the insured was caused by the accidental falling of scalding water into his ear. That this was an external and violent injury cannot be gainsaid. The facts themselves disclose its nature without the aid of inference or conclusion and to require the pleader to add a tautological averment because it contains a certain verbal formula would be the arbitrary imposition upon him of a useless duty, for defendant was advised by the facts alleged to meet a cause of action based upon an injury resulting from an external and violent cause. We are aware that in Hester v. Fidelity Co., 69 Mo. App. 186, the conclud-

ing paragraph of the opinion admits of a construction not in harmony with what we have just said and we disapprove of so much of that opinion as may be in conflict with the views expressed.

The statement that the assured died "from the effects of said accidental injury" (eleven days thereafter) is, in effect, an averment that the injury was the direct and not a remote cause of death and should be accepted as the equivalent of an allegation that the death of the assured "resulted solely" from the injury; for, manifestly, the words of the pleading express an intent to present the injury as its producing or proximate cause, and, therefore, the defendant was notified to prepare to meet that issue.

In view of what may be developed upon trial, we deem it important at this time to state our construction of the words in the policy, "if death should result solely from such injuries within three months." Considered in connection with the other provisions, it is clear that defendant undertook to insure the deceased against death resulting from bodily injuries received from an external, violent and accidental agency. If plaintiff's injury was inflicted in the manner alleged, that is, by the chance injection of scalding water into his ear, it certainly was accidental, violent and external, and we need waste no words in defining these terms. The important question that may arise under certain possible phases of proof is this: What is meant by the term, "If death should result solely from such injuries?" We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result and not that it must have been so virulent in character as necessarily and inevitably to have produced that result regardless of all other conditions and circumstances. People differ, so widely in health, vitality and ability to resist disease and injury, that what may mean

death to one man would be comparatively harmless to another and, therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervenion of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.

In Freeman v. Accident Ass'n, 156 Mass. 351, the insured died of peritonitis, which the evidence tended to show was induced by a fall. Under a policy similar to the one before us, the court sustained a judgment, observing that "Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause and, in dealing with such cases, the maxim *causa proxima non remota spectatur* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily the proximate cause. It means that the law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence in view of existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient, predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect.

117 App.—24

An injury, which might naturally produce death in a person of a certain temperament or state of health, is the cause of his death, if he dies by reason of it, even of he would not have died if his temperament or previous health had been different, and this is so as well when death comes through the medium of disease directly induced by the injury as when the injury immediately interrupts the vital processes." And in the later case of Moge v. Societe, etc., 167 Mass. 298, the Supreme Court of that State approved the doctrine announced in the Freeman case and added that "the active, efficient cause, that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source, is the direct and proximate cause referred to in the cases." [Omberg v. Accident Ass'n, 101 Ky., 303; Martin v. Indemnity Co., 151 N. Y. 94; Martin v. Accident Ass'n, 61 Hun 467; Travelers' Ass'n v. Smith, 85 Fed. Rep. 401; Ins. Co. v. Melick, 65 Fed. Rep. 178; Ins. Co. v. Murray, 16 Colo. 296; Prader v. Accident Ass'n, 95 Iowa 149; Isitt v. Assurance Co., 22 Q. B. 504.]

When evidence is introduced that points to the injury as the sole active force that brings into operation death-producing agencies, the issue of proximate cause is one of fact for the jury and not of law for the court.

The words, "such injuries," in the clause under consideration, refer to "bodily injuries caused solely and exclusively by external, violent and accidental means," without regard to the extent of disablement that immediately followed the injury. Whether the insured was wholly or partially disabled at once by the accident was a matter that concerned the indemnity to be paid him for loss of time and is not at all determinative of the right to recover upon a death claim. The intervening results of the injury are facts that should be received in evidence as bearing upon the solution of the principal issue of fact—the proximate cause of death—but, aside from this, they have no other importance.

The facts alleged in the petition sufficiently charge that the demand was due when the suit was brought. The petition states a cause of action. The judgment is reversed and the cause remanded. All concur.